**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ARAB AMERICAN ACTION NETWORK<br>3148 W 63rd St<br>Chicago, IL 60629<br><br>          *Plaintiff,*<br><br>   v.<br><br>DEPARTMENT OF HOMELAND SECURITY<br>3801 Nebraska Avenue NW<br>Washington, DC 20016,<br><br>DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530,<br><br>FEDERAL BUREAU OF INVESTIGATION<br>935 Pennsylvania Avenue NW<br>Washington, DC 20535,<br><br>        *Defendants.* | Civil Action No. 18-6528<br><br>COMPLAINT<br><br><br>September 26, 2018 |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.    The Countering Violent Extremism ("CVE") initiative is a set of secretive federal programs and grants purportedly designed to identify people in the United States who have been "radicalized" (or who are at risk of "radicalization") to prevent them from committing acts of terrorism. In practice, though, these programs are a dangerous manifestation of the surveillance state, predominantly targeting Muslim Americans, and predicated on using local communities' resources—teachers, social workers, and religious leaders—to spy on and report on young men exhibiting supposedly suspicious markers of violent extremism.

2.    These CVE programs have persisted and grown since their inception in 2011 during the Obama administration, despite repeated criticism from civil liberties groups, and despite no

evidence that CVE benefits national security. Now, CVE has reached Chicago, through funding from the Department of Homeland Security (DHS) to a little-known state agency called the Illinois Criminal Justice Information Authority (ICJIA), as well as through events held by the Federal Bureau of Investigation (FBI) and Department of Justice (DOJ). Yet, CVE remains shrouded in mystery—Chicagoans do not know how these programs are implemented, what information is gathered, how information is kept or shared, and what safeguards (if any) exist to protect free speech rights. Thus, Plaintiff Arab American Action Network (AAAN) made requests under the Freedom of Information Act (FOIA) against the three key federal agencies involved in CVE—the FBI, the DOJ, and DHS—to request records about CVE, its Illinois agency partners, and the ways the CVE operates in Chicago.

3.      The FBI, the DOJ, and DHS have stonewalled in turning over records. Plaintiff AAAN brings this lawsuit to enforce its rights under FOIA and compel their release. Chicago and its Arab-American and Muslim residents have the right to know how the government is trying to infiltrate these vulnerable communities. Thus, this Court should order the immediate release of records so that CVE in Chicago can be evaluated, and its impacts understood.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1361 and 5 U.S.C. §§ 552(a)(4)(A)(vii) and (4)(B) and 5 U.S.C. §§ 701–06.

5.      Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1)(c) as Plaintiff Arab American Action Network resides and has its primary place of business in the Northern District of Illinois, and no real property is involved in this action.

## PARTIES

6.      Plaintiff Arab American Action Network (AAAN) is a Chicago-based grassroots

2

nonprofit community center founded in 1995 to strengthen the Arab and Arab American community in Chicago by building members' capacity to actively effect positive social change. AAAN pursues this mission by engaging in community organizing, advocacy, and education, while also providing social services, leadership development, and cultural outreach.

7.      AAAN also educates the public, the press, and allied organizations in Chicago regarding findings and issues that affect Arab and Arab American communities—as well as other communities of color—in Chicago and the surrounding suburbs. The public, stakeholders, advocates, and the press rely on AAAN for this fact-based outreach and analysis.

8.      Defendant DHS is a department of the Executive Branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

9.      Defendant DOJ is a department of the Executive Branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

10.     Defendant FBI is a component of DOJ and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## BACKGROUND

11.     In late 2011, the Obama administration announced the "National Strategy for Empowering Local Partners to Prevent Violent Extremism in the United States," and a related implementation plan, with the goal of preventing "violent extremists and their supporters from inspiring, radicalizing, financing, or recruiting individuals or groups in the United States to commit acts of violence." *See* Office of the President, *Empowering Local Partners to Prevent Violent Extremism in the United States*, The White House (August 2011), at 3.

12.     The initiative—described as the Countering Violent Extremism program—operates through community education, engagement, and counter-messaging designed to predict, identify, and intervene against violent extremism or "radicalization." *Id.* at 5–7.

13.     While the CVE initiative has been framed as an effort to counter terrorism regardless of religion or ideology, in practice the program is focused almost exclusively on American Muslims. Faiza Patel & Meghan Koushik, Brennan Center for Justice, *Countering Violent Extremism* (March 16, 2017), *available at* https://www.brennancenter.org/sites/default/files/publications/Brennan%20Center%20CVE%20Report_0.pdf.

14.     In fact, the most recent list of CVE grant recipients, awarded by DHS in 2017, does not include *any* organizations that explicitly address white supremacy, far-right violent extremism or other domestic hate groups. *See* Press Release, U.S. Dep't of Homeland Sec., DHS Awards Grants to Counter Terrorist Recruitment and Radicalization in U.S. (June 23, 2017) https://www.dhs.gov/news/2017/06/23/dhs-awards-grants-counter-terrorist-recruitment-and-radicalization-us.

15.     Moreover, in February 2018, the news organization Reuters reported that the Trump administration was internally seeking to entirely rename the CVE program to "Countering Islamic Extremism" or "Countering Radical Islamic Extremism," and redirect its goals to focus exclusively on countering radicalism found within Muslim communities.

16.     The CVE program has only expanded over time. In 2014, the Justice Department announced CVE pilot programs in Boston, Minneapolis, and Los Angeles. In 2015, the government established an interagency CVE Task Force including the FBI, DOJ, DHS, and other federal agencies. In the same year, the FBI announced the creation of "Shared Responsibility Committees"

made up of community members who would secretly assess individuals referred to them by the FBI for tailored "interventions."

17.     In 2016, DHS issued a notice of funding opportunity for the Countering Violent Extremism Grant Program to provide federal grant money to non-governmental organizations, law enforcement, and institutions of higher education in order to carry out countering violent extremism programs.

18.     In mid-2017, DHS announced that the Illinois Criminal Justice Information Authority (ICJIA) was the recipient of $187,877 in CVE grant money—one of 26 local law enforcement and community organizations nationwide to receive such funding.

19.     ICJIA is a state governmental agency that addresses issues, practices, and policies in the criminal justice system.

20.     In its grant request to DHS, ICJIA proposed to develop a CVE program to help "off-ramp individuals who exhibit warning signs of radicalization to violence" that is "ideologically inspired."

21.     The ICJIA has mismanaged grant programs in the past. In 2014, state auditors completed an investigation revealing the ICJIA had violated grant protocols in distributing roughly $100 million in anti-violence grants. At the time, auditors described the anti-violence program as "hastily thrown together and grossly mismanaged," and that "there was little evidence it helped reduce violence." *See* Alex Ruppenthal , *Agency Awarded $200K Grant Without Approval from 'Partner' Organizations*, Chicago Tonight, May 23, 2017 4:54pm, *available at* https://chicagotonight.wttw.com/2017/05/23/agency-awarded-200k-grant-without-approval-partner-organizations#response.

22.     The ICJIA has a subsidiary program, called the "Targeted Violence Prevention Program" ("TVPP"), which addresses ideologically inspired targeted violence.

23.     The FBI has been listed as a federal partner of the ICJIA-TVPP, and representatives from the FBI participated in a workshop hosted by the ICJIA-TVPP in 2017.

24.     Junaid M. Afeef is the director of TVPP, a position he assumed in February 2016. Immediately prior to leading TVPP, Mr. Afeef was acting general counsel at ICJIA. Mr. Afeef previously served as the executive director of the Council of Islamic Organizations of Greater Chicago in 2008 and 2009.

25.     The TVPP is the primary beneficiary of the DHS grant awarded to ICJIA. Mr. Afeef co-wrote the grant application.

26.     In its grant application, Mr. Afeef and ICJIA-TVPP listed several "partner" organizations, stating that ICJIA had "secured the support and collaboration" of these groups, and, specifically, that these organizations were "committed to developing and delivering" its new CVE program.

27.     According to a news report by Chicago Tonight, at least four of the organizations had not committed to implementing the program, and the director of one had never even heard of ICJIA's new CVE program.

28.     Aside from the limited information found within the ICJIA-TVPP grant application, which has been made available to the press, little information is available about how the federal government is implementing the CVE initiative in Chicago or Illinois. Such information is not in the public sphere.

29.     Research *does* show, however, that initiatives focused on finding "radical" individuals in an effort to identify potential terrorists—like CVE—do not work. There is no reliable

profile, pattern, or set of indicators by which terrorists can be identified. Even the FBI has admitted that there is no one linear progression in conduct that leads to violent extremism. Fed. Bureau of Investigation, *FBI Strategic Plan to Curb Violent Extremism* 3 (declassified March 2015) *available at* https://www.brennancenter.org/sites/default/files/1318911-0%20-%20FBI%20Strategic%20Plan%20to%20Curb%20Violent%20Extremism-Section%201Imported%20Media.PDF.

30.     At the same time, the federal government has failed to establish a strategy or process to evaluate the effectiveness of CVE. In fact, the Government Accountability Office cannot, after reviewing CVE programs, determine whether the United States is better off today than it was in 2011 as a result of CVE. U.S. Gen. Account. Office, GAO-17-300, *Countering Violent Extremism: Actions Needed to Define Strategy and Assess Progress of Federal Efforts* 16–20 (April 6, 2017), *available at* https://www.gao.gov/assets/690/683984.pdf.

31.     CVE programs undermine the civil liberties and privacy rights of Americans, particularly Arab Americans and Muslim Americans. From available reports, factors like political dissent, religious expression, and real or perceived social isolation serve as potential markers for governmental agencies that implement CVE.

32.     Moreover, because CVE programs attempt to coopt community-based individuals and organizations to identify and "off-ramp" purportedly at-risk individuals, these very community resources—including teachers, mental health providers and others—become potential informants.

33.     Given the lack of information about CVE, the public has a strong interest in information about how the federal government implements CVE in Chicago and Illinois, what information is gathered, how it is shared, and what safeguards are in place to protect Americans' rights to free speech and privacy. The public has a compelling interest in this information because, without it, the public is ill-equipped to assess these programs.

### The Plaintiff's FOIA Requests

34.     To understand how CVE operates in Chicago and Illinois, Plaintiff filed FOIA requests seeking information about the program and its Illinois or Chicago-based partner organizations, such as the ICJIA and the Council of Islamic Organizations of Greater Chicago (CIOGC).

35.     On December 21, 2017, the Plaintiff submitted FOIA requests to the DHS, the DOJ, and the FBI, via U.S. Mail.

36.     The Requests seek records related to CVE and related programs, as well as communications and records exchanged between Defendants and state-based organizations. The Requests to these three federal agencies are substantively identical and are attached as Exhibit A, B, and C, respectively.

37.     Plaintiff sought a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and is not in the AAAN's commercial interest. *See* 5 U.S.C. § 552(a)(4)(A)(iii); 32 C.F.R. § 1700.6(b)(2); 22 C.F.R. § 171.17(a); 45 C.F.R. § 5.45(a); 34 C.F.R. § 5.33(a).

38.     On January 23, 2018, DHS provided a response by written letter to Plaintiff's FOIA request (DHS tracking number 2018-HQFO-00437) with respect to items number 3 and 4 of Plaintiff's FOIA Request, but then asked that Plaintiff provide a description of the records being sought in items 1, 2, 5, 6, and 7. *See* Letter dated January 23, 2018 emailed to AAAN, attached as Exhibit D.

39.     Plaintiff responded to Defendant DHS with a fuller description of the records sought in items 1, 2, 5, 6, and 7 by letter, dated March 14, 2018. *See* Letter dated March 14, 2018, attached as Exhibit E.

40.    To date, Defendant DHS has not provided responsive records related to items 1, 2, 5, 6, and 7, nor has Defendant provided a response stating that it is properly withholding such records under a specific exemption under FOIA.

41.    On December 29, 2017, Defendant DOJ received Plaintiff's FOIA Request, and assigned it tracking number MRU-FOIA-63-81. *See* Letter dated December 29, 2017, attached as Exhibit F.

42.    To date, Defendant DOJ has not provided responsive records related to Plaintiff's FOIA Request, nor has Defendant provided a response stating that it is properly withholding such records under a specific exemption under FOIA.

43.    On January 3, 2018, Defendant FBI responded to Plaintiff's FOIA Request (assigned tracking number 1392514-000), stating that its Central Records System does not have any main file records that are responsive to the request. *See* Letter dated January 3, 2018, attached as Exhibit G.

44.    Plaintiff timely appealed Defendant FBI's final response. *See* Appeal and FBI acknowledgement thereof, collectively attached as Exhibit H.

45.    Plaintiff's administrative appeal was granted by Defendant FBI and remanded to the agency for further processing. *See* May 9, 2018 decision, attached as Exhibit I.

46.    To date, Defendant FBI has not provided responsive records related to Plaintiff's FOIA Request, nor has Defendant provided a response stating that it is properly withholding such records under a specific exemption under FOIA.

**Plaintiff's Entitlement to a Fee Waiver**

47.    Plaintiff AAAN is entitled to a waiver of document search, review, and duplication

fees because disclosure of these records is likely to contribute significantly to a public understanding of the operations or activities of the government and is not primarily in the commercial interest of the AAAN. *See* 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k); 28 C.F.R. § 16.10(k).

48.     Plaintiff's Request address the policies, practices, methods, and outcomes of Defendants' CVE programs, particularly in Chicago and Illinois. These programs affect the privacy and free speech rights of Arab Americans, Muslim Americans, and concerned citizens in Chicago, yet most information about them remains hidden from public view. Chicagoans do not know the policies that govern CVE initiatives, which individuals and organizations are involved in CVE, nor how Defendants have designed and implemented CVE programs. Such information is of significant and urgent value to the public, and in particular to Arab American and Muslim American communities in Chicago. Without the release of the records sought in Plaintiff's FOIA Request, the public cannot assess CVE's impacts, nor whether CVE is needed, effective, or properly implemented to protect civil liberties.

49.     Frequent news reports reveal strong and sustained public interest in the records AAAN seeks. Given the lack of information about these CVE programs, the public interest in the limited information released, and the repeated criticisms that CVE has been discriminatory against Muslims and ineffective in improving public safety, the records sought in Plaintiff's Request will significantly contribute to the public's understanding of the government' s CVE programs.

50.     Disclosure is not in AAAN's commercial interest. Any information disclosed by AAAN as a result of its Request will be made freely available to the public.

**CLAIMS FOR RELIEF**

51.     Plaintiff repeats and incorporates every allegation contained in paragraphs 1–50 as

if set forth here in full.

52.    Defendants' failure to notify Plaintiff within 20 days (excepting Saturdays, Sundays, and legal public holidays) whether it will comply with its Request violated their rights to records under 5 U.S.C. § 552(a)(6)(A) and 5 U.S.C. § 552(a)(3)(A) and Defendants' corresponding regulations.

53.    Defendants' failure to release responsive, non-exempt records violated Plaintiff's right to those records under 5 U.S.C. § 552(a)(3)(A) and Defendants' corresponding regulations.

54.    Defendants' failure to make a reasonable search for responsive records violated Plaintiffs' rights under 5 U.S.C. § 552(a)(3)(C) and Defendant's corresponding regulations.

55.    Defendants' withholding of responsive records under 5 U.S.C. § 552(b)(6) violated Plaintiff's rights under 5 U.S.C. § 552(a)(3)(C).

## REQUESTED RELIEF

WHEREFORE, Plaintiff Arab American Action Network respectfully requests that this Court:

1.    Order Defendants to conduct a reasonable search for records responsive to Plaintiff's Request;

2.    Order Defendants to disclose and release the requested records in their entireties;

3.    Order Defendants to grant a full fee waiver to Plaintiff;

4.    Provide for expeditious proceedings in this action;

5.    Award Plaintiff costs and reasonable attorney's fees in this action as provided by 5 U.S.C. § 552(a)(1)–(2); and

6.    Grant any other and further relief the Court deems appropriate.

Dated: September 26, 2018
      Chicago, IL

                        Respectfully submitted,


                        By: _/s/ Aaron P. Wenzloff__
                        Aaron P. Wenzloff, Senior Staff Attorney (432041)
                        Hanan Van Dril, Staff Attorney (6316543)
                        COMMUNITY ACTIVISM LAW ALLIANCE
                        17 N. State Street, Suite 1380
                        Chicago, IL 60602
                        Phone: 312-999-0056
                        Fax: 312-999-0076
                        aaron@calachicago.org

                        *Counsel for Plaintiff*